# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JEREMY K. MCDONALD,**

        **Plaintiff,**

  v.                               **Civil Action 2:18-cv-622**
                                     **Judge George C. Smith**
                                     **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jeremy K. McDonald, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED**, and that judgment be entered in favor of Defendant.

**I.    BACKGROUND**

Plaintiff filed his application for DIB and SSI on May 19, 2011, alleging that he was disabled beginning June 18, 2007. (Doc. 7, Tr. 203). The onset date was later amended to February 8, 2011. (Tr. 212). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on January 15, 2013. (Tr. 38–79). On May 22, 2013, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 16–30). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6). Plaintiff appealed the decision to this Court. *See McDonald v. Comm'r of Soc. Sec.*, 2:14-cv-1610. The Court remanded the case to the Commissioner under Sentence Four of § 405(g). The Appeals Council vacated the ALJ decision

and ordered a remand. (Tr. 1014–17). An administrative hearing was held on December 13, 2016. (Tr. 915–61). On June 5, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 830–59).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 26, 2018 (Doc. 1), and the Commissioner filed the administrative record on September 24, 2018 (Doc. 7). Plaintiff filed his Statement of Errors (Doc. 8) on November 8, 2018, Defendant filed an Opposition (Doc. 9) on December 21, 2018, and Plaintiff filed his Reply (Doc. 12) on March 4, 2019. Thus, this matter is now ripe for consideration.

**A.     Relevant Hearing Testimony**

The ALJ usefully summarized Plaintiff's testimony:

> During the claimant's prior hearing, he testified that he was married with two children. He noted his wife was between two jobs, but prior to that time was employed full time outside of the home. He stated he had a driver's license, but noted it was suspended for a driving under the influence of alcohol ("DUI") charge, accident, and not having insurance (Exhibit 9A/12). The claimant reported he had pain in his right foot, worse with cold weather. He indicated he had been using a cane since injuring the foot in 2007. He reported limited standing, sitting, and walking because of his injuries. The claimant stated while he could button his shirt, his hands go numb and he drops things (Exhibit 9A/12). The claimant testified he had a history of mental health treatment but not in the year prior to his hearing. He endorsed memory problems and attention/concentration issues. He stated he had issues with anxiety, related to an inability to pay bills (lack of income) and stress caused by his children. The claimant explained that his children take up all of his time, reporting that he attends practices four times weekly, as well as attending other activities (Exhibit 9A/10). He reported no difficulty being in public (Exhibit 9A/12).

> The claimant reported that he smoked a pack of cigarettes daily and for the past year prior to the hearing only used electronic cigarettes (Exhibit 9A/13). He reported only drinking an occasional beer when he was 21 or 22 and otherwise did not drink. He stated that he used morphine (not his own/current prescription) and was discharged from a medical practice due to such use in 2010. The claimant testified that he used heroin in 2009 or 2010 until July 2011. The claimant admitted using the drug twice daily, with a street value of $20-30 (Exhibit 9A/13). The claimant reportedly stopped using the drug without any assistance and reported he has not used the drug since July 2011. At his most recent, December 2016 hearing, the attorney noted on the record the federal court focused the issue as related to the

claimant's psychological conditions. The claimant testified there had been on changes in his work activity. He reported he has not been hospitalized for any psychological treatment. However, he reported that he continues to have memory problems. The claimant reported he is now divorced and no longer living with his sons. He stated that he has been divorced for three years and has custody of his children a few nights per week and sees them on the weekends. While he is divorced, he testified he has a girlfriend and notes that she helps him around the house.

The claimant reported that he has trouble concentrating, gets side tracked easily, and has trouble remembering what people tell him. He stated that he is depressed and reported being anxious, especially in a room full of people. He stated he does not like crowds and reported bad anxiety during his hearing. He noted when anxious, he breathes harder and feels like he is going nuts, like he needs to isolate himself   He reports feeling this way 4-6 times per week.  The claimant testified that he continues to smoke vapor cigarettes. He reported that he has not drank in a couple of years and has not used street drugs in a few years. Specifically, he testified he has not used heroin since the past hearing. He has not had any convictions since his last hearing.  The claimant reported he is no longer on probation.

(Tr. 839–40.)

### B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2011 and had not engaged in substantial gainful employment since February 8, 2011, the alleged onset date. (Tr. 835). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the spine; history of L1 vertebral fracture, status post motor vehicle accident; T12 compression fracture, status post fusion; bilateral carpal tunnel syndrome; history of R ankle fracture; history of rib fracture, status post motor vehicle accident; left below the knee amputation, with prosthetics; history of seizure like events; an adjustment disorder; a depressive disorder; an anxiety disorder; and a history of polysubstance abuse. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 836).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[T]he claimant has the residual functional capacity to perform light work as defined

> in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently. He could sit for up to 6 hours out of an 8-hour workday and could stand and/or walk up to 4 hours out of an 8-hour workday, taking five minute breaks or changing positions after one hour of standing/walking, while staying on task. He could occasionally climb stairs, balance, stoop, crouch, bend, and squat. He would be precluded from climbing ladder, ropes, and scaffolds, and precluded from crawling. He could push/pull to the same extent he could lift/carry. The claimant could frequently perform fine manipulation. He could frequently use his right lower extremity and could occasionally use the left foot for operation of foot controls. The claimant should avoid concentrated exposure to cold and would be precluded from driving commercially in the workplace, operating dangerous machinery, or working at unprotected heights. Mentally, he could understand, remember, and follow, simple, routine tasks and would not need to be off task. However, tasks that were more complex in nature might result in some off task related behaviors. He would be limited to jobs without public contact and could not engage in customer service. The claimant could perform a low stress job, defined here as no strict production quota or time pressure and a relatively static position, where changes could be easily explained. Teamwork would be eliminated, as the claimant could perform tasks on a single/independent basis.

(Tr. 838).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises three errors to the Court. (Doc. 8). First, he argues that the ALJ committed reversible error in failing to comply with the United States District Court's and Appeals Council's remand orders. Second, he argues that the ALJ erred in failing to discuss the impact that the use of a cane would have on his ability to work. And finally, he argues that the ALJ failed to follow the required subpoena procedures, resulting in an incomplete record.

### A. Dr. Kent Rowland's Opinion

In his first assigned error, Plaintiff contends that the ALJ failed to comply with the remand order, which directed a proper evaluation of the opinion of Kent Rowland, Ph.D. (*See generally* Tr. 993–1013).

In June 2011, Dr. Rowland performed a psychological consultative evaluation of Plaintiff (Tr. 629–39). Dr. Rowland diagnosed Plaintiff with major depressive disorder, single episode, moderate severity; and assessed a Global Assessment of Functioning (GAF) score of 60, indicating only moderate symptoms or limitations. (Tr. 637). Dr. Rowland opined that Plaintiff may have difficulty handling complex instructions and tasks; would have some difficulty with attention and concentration; and would have significant difficulty responding appropriately to work pressures but could manage his own funds (Tr. 637–38). Dr. Rowland additionally opined that Plaintiff would be inclined to give up easily, leave the job, or respond negatively to coworkers under stressful situations. (Tr. 638; *see also* Tr. 637 (noting that Plaintiff is anxious, nervous, worried, and has racing thoughts)).

The ALJ evaluated Dr. Rowland's opinion in this way:

> The undersigned gives partial weight to the opinion of consultative examiner, Dr. Rowland, Ph.D., evidenced at Exhibit 29F. He assessed the claimant had a GAF score of 60, denoting no more than moderate mental health limitations. He further assessed the claimant may have difficulty handling complex instructions and tasks;

have some difficulty with attention and concentration; and have significant difficulty responding appropriately to work pressures. However, he noted the claimant was capable of managing his funds without assistance. It should be noted his statement regarding interaction with others was based upon his observations and the claimant's subjective reports. The undersigned gives some weight to the GAF score. A GAF score itself is not a determinative measure of disability, is only relevant on the date and time at which it was assessed, and takes into consideration other factors not considered when determining disability, such as financial stressors. Here, the undersigned finds the GAF score, denoting no more than moderate mental limitations generally consistent with the totality of the evidence of record, showing the claimant's mental symptoms were controlled with no more than conservative medications, requiring no more than mere few months of counseling treatment, in part of which was parental counseling on how to manage his son's behaviors. The undersigned affords greater weight to the limitation noting the claimant was able to manage his own funds without assistance. The record supports whatever funds the claimant had he was able to manage on his own accord. The record supported he could leave his home unaccompanied, go shopping, prepare meals, and self reported no deficits paying bills or making purchases. The undersigned gives less weight to the limitation on social functioning. The undersigned finds the limitation noted by Dr. Rowland was based upon his observation and the claimant's subjective report. The objective evidence of record supports the claimant indicated some deficits in interacting and relating with others; however, with medications the claimant's symptoms were less. The record supports while he reported a need to isolate, he also indicated he had no problems with authority figures and could interact with his friends, attending cookouts and bonfires without problem. He noted that he was able to go to his sons' sporting events and practices, notably social settings without problems or suggested adaptations, such as sitting in the car. The claimant reported he was able to go shopping without any noted adaptations, such as going to the store at night. He reported he was nervous during his hearing, but despite his reported symptoms, he evidenced no need for redirection and no observed oddities in his behavior. The undersigned affords more weight to the limitations on responding to work pressures and completing work tasks/concentration, as they are generally consistent with the totality of the evidence of record. The record supports as a result of his combination of mental conditions, the claimant is likely to require some limitation on changes in the work setting. While he reported significant memory loss, the record supported he performed generally okay on memory related tasks during his examination and could perform simple, routine tasks without problem. While the record supports he was not precluded from performing some complex tasks, the record supports he would require, due to his attention deficits, some time/production limitations. Thus, overall the undersigned gives the one time, brief assessment completed by the one time examiner, Dr. Roland partial weight.

In further regard to Dr. Rowland's assessment per the District Court order, for clarity, it should be noted Dr. Rowland's opinion at Exhibit 29F was addressed fully in accordance to the rules and regulations. Subsequently, the opinion was given

partial weight. The undersigned addressed the issue of pace and being overall moderately limited in the ability to complete a normal workweek and workday. The undersigned included the above limitations including those of a low stress job, defined as needing limitations on time and production demands, as well as static positions where changes were easily explained. This low stress job was in addition to the above assessed social functioning limitations, limitations on concentration, persistence, and pace, and limitations on the type of work tasks. Thus, the record supports the undersigned has appropriately included and considered the consultative examination completed by Dr. Rowland at Exhibit 29F.

(Tr. 852–53).

Given this analysis of Dr. Rowland's opinion, and the other evidence of record, the ALJ ultimately concluded that Plaintiff "could understand, remember, and follow, simple, routine tasks and would not need to be off task." (Tr. 838). But, the ALJ noted, more complex tasks might result in Plaintiff being off task, and Plaintiff should have no public contact and a low-stress job with "no strict production quotas or time pressure time pressure and a relatively static position, where changes could be easily explained." (*Id.*)

As noted, the remand order required a proper evaluation of Dr. Rowland's opinion. The Undersigned concludes that the ALJ did just that. She adequately articulated her rationale and weighed Dr. Rowland's opinion sufficiently to provide meaningful judicial review. Further, substantial evidence supports the analysis, and the ALJ did not err. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## B. Ambulatory Device

Plaintiff next contends that the ALJ should have included the need for an ambulatory device in the RFC. (Doc. 8 at 10–11). To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a handheld assistive

7

device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Importantly, "[w]here there is conflicting evidence concerning the need for a cane, it is the ALJ's task and not the Court's, to resolve conflicts in the evidence." *Bowen v. Comm'r of Soc. Sec.*, No. 17-17, 2018 WL 328964, at *3 (S.D. Ohio Jan. 9, 2018) (internal quotation marks and citation omitted).

Here, the ALJ noted that Plaintiff was involved in a motor vehicle accident and required surgical intervention on his left leg in February 2011. (Tr. 844). Eventually, Plaintiff's lower left leg was amputated, and he used crutches and a walker at various points. (Tr. 665–69). In March 2011, the medical record shows that his limb was healing well and he had a temporary prosthetic device created. (Tr. 666–69). In April 2011, Plaintiff again reported doing well and that his pain was controlled with medications. (Tr. 619, 669). During this visit, Plaintiff additionally noted that during the prior month, he had used crutches at times and a cane at others to walk. (Tr. 668–70). In her decision, the ALJ noted that some records, primarily from Orthopedic Spine Center, indicate that Plaintiff used a cane from the time of his accident in February 2011 until November 2011. (Tr. 634, 647, 650, 653, 656, 670, 698). Contrarily, medical notes from Ace Prosthetics show that by June 2011, Plaintiff ambulated independently and did not use an assistive device. (Tr. 641, 670–71). But a record from July 2011 shows the use of a cane. (Tr. 656). Later, in September and October 2011, Plaintiff did not use an assistive device. (Tr. 640, 672–74). He walked with good balance, and he noted that he was comfortable on the limb and overall pleased with the prosthesis. (Tr. 675). Plaintiff additionally reported that he was looking forward to chasing his children soon and catching them. (Tr. 675).

Further, the state agency doctors, at the initial and reconsideration levels, noted that Plaintiff's use of a prosthetic device was improving and did not include a need for Plaintiff to use a cane. (Tr. 93, 106, 122, 136). Their opinions were based on review of the evidence of record at that time. *See* 20 C.F.R. §§ 404.1527(e), 404.1513a. The ALJ gave the state agency assessments partial weight and included additional limitations based on subsequently submitted evidence (Tr. 851). However, the record did not reflect that Plaintiff required a cane after his recovery.

In sum, the record does not show definitively that Plaintiff needed to use an ambulatory device for a period of at least one year. Instead, there is conflicting evidence regarding Plaintiff's need for and use of an ambulatory device. The ALJ resolved those conflicts, and substantial evidence supports her decision.

**C. The Record**

In his final argument, Plaintiff asserts that the ALJ failed to follow required subpoena procedures, causing the record to be incomplete. (Doc. 8 at 12). HALLEX I-2-5-82 provides:

> If an individual refuses or fails to comply with a subpoena, the [ALJ] will consider any change in circumstance since issuing the subpoena and re-evaluate whether the evidence or facts requested are reasonably necessary for the full presentation of the case. If the ALJ finds the information is reasonably necessary for the full presentation of the case, he or she will prepare a memorandum to the Office of the General Counsel (OGC) Regional Chief Counsel, requesting enforcement of the subpoena.

The question for this Court is whether the ALJ improperly concluded that the record was complete without the records of Dr. Larry Doss.

At the end of the administrative hearing, Plaintiff's counsel mentioned that he had the RFC statements from Dr. Doss but noted that he might have some other relevant treatment notes. (Tr. 832). Accordingly, counsel asked the ALJ to subpoena any records Dr. Doss might have. The ALJ responded that counsel could prepare reasons why he needed the subpoena and prepare a

9

subpoena for Dr. Doss. (*Id.*). Instead, Plaintiff's counsel submitted a letter to the ALJ, dated December 22, 2016, requesting the issuance of a subpoena for all materials, including office and treatment notes beginning January 1, 2015. (Tr. 1049).

The ALJ responded to the subpoena request by sending a letter to Dr. Doss, which requested Plaintiff's medical records and notes from January 1, 2015 to the present date. (Tr. 1051). On February 23, 2017, the ALJ sent a letter to Plaintiff and his attorney noting that Dr. Doss had not responded to a subsequent request for evidence production (Tr. 1055), and the ALJ sent a subpoena to him. (Tr. 1056–58). Dr. Doss did not comply. (Tr. 832). The ALJ informed Plaintiff and his attorney that all lengths were pursued to obtain a medical evidence from Dr. Doss and did not receive a response and that the decision process would continue. (Tr. 832). In May 2017, Plaintiff's attorney requested that if Plaintiff did not receive a fully favorable decision, that the ALJ forward the subpoena to the United States Attorney. (Tr. 1097).

The ALJ determined that such action was unnecessary:

> [Plaintiff's] attorney has provided no evidence that Dr. Doss has routine, regular treatment notes. Rather, he merely speculated at hearing that because the claimant sees the physician for medication management that office notes would be available. In fact, the claimant's treatment history suggests only sporadic, intermittent follow up with treatment providers. The claimant receives prescriptions from Dr. Doss; however, neither the attorney nor the claimant outlined the frequency of visits the claimant or the duration of his follow up appointments. The claimant testified that he was receiving therapy from a subsequent provider, but stopped that treatment 4–5 months prior to his supplemental hearing in December 2016. Further, he clarified to the medical expert on the record that he was seeing Dr. Doss for medication management only. If the attorney felt Dr. Doss' medicinal records were imperative to the determination of disability, he made no effort to present integral issues or information he felt would be held within the medication treatment notes that were imperative to the decision in this case. Further, only two requests for records were made during the entire time the attorney represented the claimant and there was no indication the attorney had suggested the claimant personally obtain the medical records during his in person treatment follow-ups with the provider, Dr. Ross, or why the records were not obtained in such a manner. Additionally, the undersigned finds the record contains medical treatment evidence from other treatment providers, including consultative examiners and medical experts. Therefore, there

> is enough readily available medical evidence within the totality of the evidentiary record to render a determination in this case. Thus, the undersigned has found neither the claimant nor the attorney have demonstrated Dr. Doss' records meet the burden of Hallex I-2-5-82 and a determination will be made without the treatment notes in this case.

(Tr. 832–33).

The Undersigned concludes that the ALJ did not error. HALLEX I-2-5-82 required nothing more of her, and the record was complete. *See Serrano v. Barnhart*, 2005 U.S. Dist. LEXIS 31019 (S.D.N.Y. Nov. 10, 2005) (holding that ALJ was not required to enforce a subpoena because the record was otherwise complete).

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report

and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:                                              /s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE